IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    Plaintiff,

v.        Case No. 17-10161-JWB

DESHAWN D. WHEATON,

    Defendant.

## **MEMORANDUM AND ORDER**

This case comes before the court on Defendant's motion to suppress and motion to dismiss count 4. (Docs. 28, 30.) The motions have been fully briefed and the court held an evidentiary hearing on August 21, 2018. (Docs. 29, 31, 32, 33.) Defendant's motion to suppress is DENIED and Defendant's motion to dismiss is DENIED for the reasons herein.

### I. Facts

The court finds the following facts from the evidence presented at the hearing. On July 29, 2017, Wichita Police officers Atkins and Fisher were patrolling in the area of 21st and Grove streets in Wichita, Kansas. Atkins is currently on active duty for the Kansas National Guard and had been a police officer for more than four years at the time of the stop. Fisher has been an officer for eight years. Both officers had extensive training and were part of the Special Community Action Team (SCAT). On the evening of July 29, around midnight, they were patrolling in a high crime area. They observed a vehicle traveling without lights, which is a violation of Kansas law. As the driver turned the corner, the vehicle's lights came on. Atkins was driving the patrol car and he activated the emergency lights to pull over the vehicle.

After the stopping the vehicle, Atkins exited the patrol car and approached the driver. Fisher approached the passenger side of the vehicle for safety reasons. Defendant Deshawn

1

Wheaton was the driver of the vehicle. Defendant handed over his license and insurance. Atkins asked Defendant where he was headed. Defendant stated that he was going to a friend's house. Atkins noticed a strong fragrance in the vehicle that smelled like an air freshener. Atkins asked Defendant if he was covering up something in the vehicle. Defendant said that he was not. Atkins told Defendant that he was stopped for not having his lights on. Defendant admitted that he had been driving without headlights.

Atkins returned to his patrol car to do a check on Defendant's driver's license. As a practice, Atkins always does a criminal history check on the computer. The check tells the officer if a particular driver has any history of arrests or any outstanding warrants for the City of Wichita. The computer check does not display actual convictions. In order to confirm a driver's actual convictions or warrant status, the officer calls into dispatch. After running Defendant's information, Atkins learned that Defendant had various arrests for violent crimes, drugs and guns. Upon learning this information, coupled with the facts that there was a strong smell in the car and Defendant's lights had been off, Atkins believed that Defendant may be under the influence of drugs or alcohol and/or that there were drugs in the vehicle. Atkins testified that driving without lights is an indication that the driver is impaired. Additionally, an air freshener can be used to cover up the smell of marijuana. Atkins decided to ask Defendant to step out of the vehicle for additional questioning and to determine if he was impaired.

Atkins returned to the driver's side of the vehicle and told Defendant to step out of the vehicle. At this time, Fisher remained standing on the passenger side of the vehicle. Fisher observed Defendant take something out of his pocket and shove it under the driver's seat. Fisher could not tell what it was because his flashlight was not working. When Defendant stepped out of the vehicle, Atkins led him to the sidewalk for safety reasons. Atkins asked Defendant if he had

any weapons and then patted him down to check. Atkins told Defendant that he was not under arrest and asked him if he was under the influence. Defendant denied being under the influence. Fisher then asked Atkins for his flashlight so that he could shine it in the vehicle to look under the driver's seat. Fisher walked to the driver's side of the vehicle with the flashlight. Atkins then asked Defendant if he could search the vehicle. Defendant said no and denied having any drugs in the vehicle. Atkins testified that Defendant's nervousness was increasing during the conversation on the sidewalk.

During this time, Fisher was standing outside the driver's side window and shining the flashlight in the vehicle. Fisher did not stick the flashlight through the open window while looking in the vehicle. As Fisher shined the flashlight, he observed the grip of a gun sticking out from under the driver's seat. Fisher then decided to place Defendant in handcuffs. Fisher testified that individuals can decide to flee upon learning that a weapon has been discovered and that potential threat is avoided with handcuffing the individual. Fisher approached Defendant and placed him in handcuffs. Fisher informed Defendant that he would be in handcuffs until they determined why he stuffed a gun under the seat. Defendant denied shoving a gun under the seat. Fisher testified that in his experience an individual would hide a firearm if that individual was a prohibited person or if the gun was stolen. Fisher asked Defendant if he was a convicted felon. Defendant stated that he was. Fisher asked Defendant about his conviction and Defendant responded that he was convicted of possession with intent to distribute. Fisher informed Defendant that they would verify his record. Fisher stated that if his conviction was a particular age then Defendant's rights to possess a gun may have been restored. Atkins then went to the driver's side of the vehicle and shined the flashlight into the vehicle. Atkins did not stick the flashlight inside of the vehicle.

3

Atkins was able to see the grip of the gun after shining the flashlight through the windshield. The detention on the sidewalk lasted approximately three to four minutes.

The officers made the decision to detain Defendant because he had shoved the gun under the seat and they believed that he was either a felon in possession of a gun or that the gun was stolen. Defendant was placed in the patrol car. Fisher then made a call to dispatch to confirm Defendant's criminal history. Fisher also checked the Kansas Department of Corrections' (KDOC) website for Defendant's prior convictions. The website, KASPER, showed that Defendant had a prior felony conviction. Atkins testified that he did not seize the gun until Fisher informed him that Defendant was a felon.[1] Atkins returned to Defendant's vehicle and retrieved the gun from under the seat. When he seized the gun, Atkins also observed an open bottle of cognac under the driver's seat.

After seizing the gun and the open container, Atkins then proceeded to search the vehicle. Based on the allegations in the indictment, the vehicle contained cocaine, marijuana and four handguns.[2]

On November 1, 2017, an indictment was filed charging Defendant possession with intent to distribute controlled substances, possession of a firearm in furtherance of a drug trafficking crime, and felon in possession of a firearm. (Doc. 1.) Reviewing Defendant's criminal history, Defendant was convicted of possession of marijuana after a prior conviction on November 26,

---

[1] Fisher testified that he initially checked Defendant's criminal history on KDOC's website and also called into dispatch. Fisher testified that he could not recall when he relayed the information about Defendant's criminal history to Atkins. Ultimately, Fisher stated that he informed Atkins about Defendant's criminal history confirmation after he received the information from dispatch. Fisher stated that Atkins was searching the vehicle at that time. The court notes that Atkins and Fisher's testimony do not necessarily conflict as Atkins testified that he did not know how the criminal history was confirmed at the time the information was relayed to him. Nevertheless, the timing of the confirmation is not critical as the court finds, *infra*, that Defendant's voluntary statement, coupled with all of the facts discussed, provided probable cause to search the vehicle.

[2] The officers did not testify about cocaine, marijuana, or multiple firearms being found in the vehicle. The indictment, however, alleges that all of the offenses occurred on the same date. Presumably, those items were all seized from Defendant's vehicle on the date of the stop.

2012. (Doc. 29, Exh. 1.) Under the Kansas Sentencing Guidelines, which uses a grid box to determine sentencing, Defendant's conviction was designated as a level 4 non-person felony. Defendant's criminal history was a classification of "H," which placed him in a box that called for presumptive probation. In addition, the presumptive sentencing range was 12 to 14 months. On February 15, 2013, Defendant was sentenced to 12 months imprisonment with probation granted.

Defendant has now moved to suppress the items seized from his vehicle, on the basis that the search violated the Fourth Amendment, and to dismiss count 4, felon in possession, on the basis that his prior conviction was not punishable by more than imprisonment exceeding one year.

**II.     Analysis**

**A.  Motion to Suppress**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Supreme Court has liberally interpreted "seizures" to encompass routine traffic stops, "even though the purpose of the stop is limited and the resulting detention quite brief." *See Delaware v. Prouse*, 440 U.S. 648, 653, 99 S. Ct. 1391 (1979). An initial traffic stop is justified at its inception if "an officer has (1) probable cause to believe a traffic violation has occurred, or (2) a reasonable articulable suspicion that a particular motorist has violated any of the traffic or equipment regulations of the jurisdiction." *United States v. Winder*, 557 F.3d 1129, 1134 (10th Cir. 2009).

In this case, the undisputed facts show that the traffic stop was justified. Defendant was traveling without his lights at night in violation of Kansas law. Even when the initial stop is valid, any investigative detention must not last "longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500, 103 S. Ct. 1319 (1983). An officer "conducting a routine traffic stop may request a driver's license and vehicle registration, run a computer check,

and issue a citation." *United States v. Bradford*, 423 F.3d 1149, 1156 (10th Cir. 2005). The uncontroverted testimony shows that Atkins approached the vehicle upon initially stopping it and then obtained Defendant's driving documents. Atkins returned to his patrol car to run a license and background check, which was appropriate. Therefore, the scope of the traffic stop was reasonably related in scope to the circumstances which initially justified the interference. *Terry v. Ohio*, 392 U.S. 1, 20, 88 S. Ct. 1868 (1968).

    **i.**    **Lengthening Initial Stop**

Defendant argues that the stop was then unreasonably prolonged when Atkins asked Defendant to step out of the vehicle. "Lengthening the detention for further questioning beyond that related to the initial stop is permissible in two circumstances. First, the officer may detain the driver for questioning unrelated to the initial stop if he has an objectively reasonable and articulable suspicion illegal activity has occurred or is occurring. Second, further questioning unrelated to the initial stop is permissible if the initial detention has become a consensual encounter." *United States v. Hunnicutt*, 135 F.3d 1345, 1349 (10th Cir. 1998) (internal citations omitted). Based on the testimony at the hearing, it is clear that Defendant was not free to go and was required to step on to the curb after Atkins approached the vehicle. Therefore, the prolonged detention is permissible only if Atkins had an objectively reasonable and articulable suspicion that illegal activity had occurred or was occurring. The court views the "totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing.'" *United States v. Santos*, 403 F.3d 1120, 1134 (10th Cir. 2005) (quoting *United States v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct. 744 (2002) (quotations omitted)). The court must "allow[ ] officers to draw on their own experience and specialized training to make inferences

and issue a citation." *United States v. Bradford*, 423 F.3d 1149, 1156 (10th Cir. 2005). The uncontroverted testimony shows that Atkins approached the vehicle upon initially stopping it and then obtained Defendant's driving documents. Atkins returned to his patrol car to run a license and background check, which was appropriate. Therefore, the scope of the traffic stop was reasonably related in scope to the circumstances which initially justified the interference. *Terry v. Ohio*, 392 U.S. 1, 20, 88 S. Ct. 1868 (1968).

    **i.**    **Lengthening Initial Stop**

Defendant argues that the stop was then unreasonably prolonged when Atkins asked Defendant to step out of the vehicle. "Lengthening the detention for further questioning beyond that related to the initial stop is permissible in two circumstances. First, the officer may detain the driver for questioning unrelated to the initial stop if he has an objectively reasonable and articulable suspicion illegal activity has occurred or is occurring. Second, further questioning unrelated to the initial stop is permissible if the initial detention has become a consensual encounter." *United States v. Hunnicutt*, 135 F.3d 1345, 1349 (10th Cir. 1998) (internal citations omitted). Based on the testimony at the hearing, it is clear that Defendant was not free to go and was required to step on to the curb after Atkins approached the vehicle. Therefore, the prolonged detention is permissible only if Atkins had an objectively reasonable and articulable suspicion that illegal activity had occurred or was occurring. The court views the "totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing.'" *United States v. Santos*, 403 F.3d 1120, 1134 (10th Cir. 2005) (quoting *United States v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct. 744 (2002) (quotations omitted)). The court must "allow[ ] officers to draw on their own experience and specialized training to make inferences

from and deductions about the cumulative information available to them that might well elude an untrained person." *Id.* at 1124 (quoting *Arvizu*, 534 U.S. at 273).

Defendant argues that the detention was not reasonable as the two pieces of evidence used to detain Defendant, the air freshener smell and his arrest history, are insufficient reasons to prolong the stop under Tenth Circuit precedent.[3] (Doc. 42 at 4.) Defendant cites to *United States v. Villa-Chaparro*, 115 F.3d 797, 802 (10th Cir. 1997) and *United States v. Sandoval*, 29 F.3d 537, 542 (10th Cir. 1994). In *Sandoval*, the Circuit stated that "knowledge of a person's prior criminal involvement (to say nothing of a mere arrest) is alone insufficient to give rise to the requisite reasonable suspicion." 29 F.3d at 542. Defendant cites *Villa-Chaparro* for the proposition that "[t]he scent of a masking agent alone is insufficient to establish reasonable suspicion." 115 F.3d at 802. The Circuit, however, clarified that "although the scent of a masking agent alone is insufficient to establish reasonable suspicion, *we have repeatedly held that air freshener coupled with other indicia of criminal activity supports a reasonable brief inquiry*.... The fact that air freshener [or laundry detergent] may be used innocently does not mean that it cannot be used under other suspicious circumstances." *Villa-Chaparro*, 115 F.3d at 802 (internal citations omitted) (emphasis supplied).

The officers in this case did not rely solely on the air freshener - or Defendant's criminal history - to detain Defendant for further questioning. Rather, Atkins testified that there were several facts that led to his decision to detain Defendant. Atkins testified that he decided to ask Defendant to step out of the vehicle because he believed that Defendant may have been impaired and/or had controlled substances in the vehicle. Atkins based this decision on Defendant's arrest

---

[3] In his initial brief, Defendant argued that the purpose of prolonging the stop was to seek consent to search Defendant's vehicle. (Doc. 11 at 11-12.) The testimony does not support this position. While Atkins did ask Defendant if he could search the vehicle, Defendant was detained due to suspicions that he was impaired and/or had controlled substances in the vehicle, see discussion *infra*.

7

history, which included arrests for drugs, the smell of air freshener in the vehicle and the fact that the lights had been off which is an indicator of an impaired driver. Additionally, Defendant did not put the vehicle in park when he first pulled over. Atkins testified that this is a safety concern and can mean that the driver intends to flee. After a review of all the circumstances, the court finds that the officers provided a particularized and objective basis for suspecting Defendant was under the influence of alcohol and/or drugs. Therefore, the officers were justified in lengthening Defendant's detention and asking him to step out of the vehicle.

## ii. Observation of Gun in Defendant's Vehicle

Prior to exiting the vehicle, Fisher observed Defendant shove something under the driver's seat. The bodycam videos were played for the court during the suppression hearing. Fisher's video clearly shows Defendant removing something from his pocket and stashing it under the seat. Because it was dark outside, the video does not clearly show what the object was. Defendant then exited the vehicle. The detention and questioning lasted mere minutes. During the initial questioning by Atkins, Fisher obtained Atkins' flashlight and used it to attempt to determine what Defendant shoved under the seat. Atkins also later viewed the gun by shining his flashlight in the vehicle. The videos show the officers shining their flashlights into the vehicle. The officers testified that they did not breach the interior of the vehicle with the flashlights. The testimony was supported by the videos. As testified to during the hearing, the videos show that the light from the flashlight was reflected on the frame of the window or the window glass. This shows that the flashlight was not inside of the vehicle as there would not be a reflection of the light on the outside of the vehicle if the flashlight had breached the interior of the vehicle.

The court finds, based on the evidence during the hearing, that Fisher (and Atkins) did not breach the interior of the vehicle while shining the flashlight into the vehicle. Rather, the

flashlight, at all times, was outside of the vehicle. A police officer may utilize a flashlight to view the interior of a vehicle "without any infringement of Fourth Amendment rights." *United States v. Green,* 140 F. App'x 798, 800 (10th Cir. 2005) (citing *Texas v. Brown*, 460 U.S. 730, 739-40, 103 S. Ct. 1535, 75 L. Ed.2d 502 (1983) (plurality opinion); *United States v. Ortiz*, 63 F.3d 952, 954 (10th Cir. 1995)). Therefore, the officers' actions in using a flashlight to view the interior of the vehicle, without breaching the interior, did not constitute a search.

Upon observing the gun, Fisher then placed Defendant in handcuffs. Fisher took this action as a safety measure because suspects' reactions are unpredictable when told that officers have located a weapon. Fisher testified that Defendant may have attempted to flee. The court finds that the use of handcuffs during the detention was reasonable: the area was a high crime area; Defendant had a criminal arrest history that included drugs, guns and violent crimes; it was late at night; and Fisher reasonably believed that Defendant was trying to conceal the gun.

Upon a review of all the circumstances, the court further finds that Defendant was not under arrest at the time he was placed in handcuffs.[4] *See United States v. Salas-Garcia*, 698 F.3d 1242, 1252 (10th Cir. 2012) (use of handcuffs reasonable considering circumstances) (citing *United*

---

[4] Although Defendant makes a single statement that he was not *Mirandized* prior to the questioning regarding his status as a felon, Defendant does not move to suppress his statements under *Miranda* nor assert that he was in custody for the purposes of *Miranda*. Defendant also does not argue that the seizure of the gun should be suppressed due to the taint of the failure to give a *Miranda* warning. Therefore, the court does not see a need to address this issue. Moreover, even if Defendant should have been given *Miranda* warnings prior to being asked about his status as a felon, the remedy would be to exclude the statements during trial but not any nontestimonial physical fruits. *See United States v. Ross*, 113 F. App'x 884, 886–87 (10th Cir. 2004). "The Self–Incrimination Clause [] is not implicated by the admission into evidence of the physical fruit of a voluntary statement." *United States v. Patane*, 542 U.S. 630, 636, 124 S. Ct. 2620, 2626, 159 L. Ed. 2d 667 (2004); *see also United States v. Phillips*, 468 F.3d 1264, 1266 (10th Cir. 2006). Based on the circumstances at the time of the questioning, the court finds Defendant's statements were made voluntarily within the meaning of the Fifth Amendment. *See United States v. Cordova*, 340 F. App'x 427, 2009 WL 2351618 (10th Cir. 2009) (listing factors included in consideration of voluntariness). Defendant is of mature age and appears to be of at least average intelligence; the length of his detention and questioning was exceedingly brief, only a couple of minutes; he was not advised of his right to remain silent and was questioned in a police-dominated atmosphere, but at the same time he was not subjected to any physical improper tactics, trickery, or coercion to compel him to make a statement. Officer Fisher was polite and professional at all times and did nothing to overcome Defendant's ability to decide whether to make a statement.

*States v. Albert*, 579 F.3d 1188, 1193–94 (10th Cir. 2009) (holding that placing the defendant in handcuffs for twenty minutes was reasonable and did not elevate the detention into an arrest). Defendant was placed in handcuffs as a precaution due to factors discussed *supra*. Defendant was told that he was restrained in order to determine why he stuffed the gun under the seat. Defendant was further told that he would be released if it was determined that he could lawfully possess the gun. However, both officers testified that they believed that Defendant was either a felon or that the gun was stolen due to Defendant's actions in concealing the gun, as possession of a gun is otherwise lawful in Kansas. Defendant confirmed those suspicions by informing Fisher that he was a felon.

Although Defendant stated that he was a felon, the officers were going to verify his criminal history through dispatch, which was routine. Defendant was placed in the back seat of the patrol car. At that time, Fisher called in to dispatch to request Defendant's criminal history. After giving Defendant's information to dispatch, Defendant waited for a return call that would confirm Defendant's criminal history. Fisher did view the KDOC's website and observed that it confirmed Defendant's felon status; however, the officers also would routinely confirm the information through dispatch.

The court finds that the officers did not conduct a search by viewing into the interior of the vehicle with the flashlight and that the use of restraints after observing the gun was reasonable given the circumstances.

### iii. Seizure of Gun

While waiting for confirmation from dispatch, Atkins returned to the vehicle and seized the gun. Under the plain view doctrine, "a law enforcement officer [may] seize evidence of a crime, without violating the Fourth Amendment, if (1) the officer was lawfully in a position from

10

which the object seized was in plain view, (2) the object's incriminating character was immediately apparent ... and (3) the officer had a lawful right of access to the object." *United States v. Angelos*, 433 F.3d 738, 747 (10th Cir. 2006) (quotations omitted). The court has already determined that the officers were lawfully in a position to view the object. The remaining requirements are that the gun's incriminating character was immediately apparent and the officer had a lawful right to access.

While the gun, by itself, is not incriminating, the presence of the gun, coupled with the knowledge that Defendant was a felon, is. *Green*, 140 F. App'x at 800. Under Kansas and federal law, a felon cannot possess a gun. Although the officers were making an effort to determine whether Defendant's prior felony fell under a class of felonies that would allow a restoration of rights after a certain period of time, they did have knowledge, based on Defendant's own statements and the KDOC website, that Defendant was a felon. In addition, the officers reasonably believed that Defendant was attempting to conceal the gun, and their testimony was credible that such an action is not typically taken unless a suspect is a prohibited person or the gun is stolen. Moreover, Defendant had a significant arrest history, was driving with his lights off and in a high crime area. "A seizing officer need not 'know' or have an 'unduly high degree of certainty' as to the incriminatory character of the evidence under the plain view doctrine. All that is required is a 'practical, nontechnical probability that incriminating evidence is involved.'" *United States v. Troxel*, 547 F. Supp. 2d 1190, 1203 (D. Kan. 2008) (citing *Arizona v. Hicks*, 480 U.S. 321, 326, 107 S. Ct. 1149 (1987); *Texas v. Brown*, 460 U.S. 730, 742, 103 S. Ct. 1535 (1983); *United States v. Sanchez*, 89 F.3d 715, 719 (10th Cir. 1996)). Based on all of the circumstances, the court finds that the officers had probable cause to believe that the gun was evidence of a crime.

Because the officers had probable cause to believe the gun was evidence of a crime, the officers had a lawful right to access the interior of the vehicle. *United States v. Reynolds*, No. 15-10093-EFM, 2016 WL 5916949, at *6 (D. Kan. Oct. 11, 2016), *aff'd*, 729 F. App'x 639 (10th Cir. 2018). Therefore, the seizure of the gun was lawful. *See Green*, 140 F. App'x at 800.

### iv. Search of Entire Vehicle

Upon seizing the gun, Atkins also observed an open bottle of alcohol under the driver's seat.[5] Driving with an open container of alcohol is a violation of Kansas law. K.S.A. 8-1599. After returning to the patrol car with the gun, Atkins then returned to Defendant's vehicle to conduct a search of the entire vehicle. The court finds that the search of the vehicle without a warrant was lawful as the officers had probable cause to believe that evidence of crimes, both felon in possession and open container, may be contained in the vehicle based upon all of the circumstances discussed *supra*. *United States v. Sparks*, 291 F.3d 683, 690 (10th Cir. 2002) ("[I]f an officer has lawfully observed an object of incriminating character in plain view in a vehicle, that observation, either alone or in combination with additional facts, has been held sufficient to allow the officer to conduct a probable cause search of the vehicle.")

Therefore, any contraband found within the vehicle during the search was lawfully seized. Defendant's motion to suppress evidence found in the vehicle is denied.

### v. Inevitable Discovery

As an alternative basis for denying the motion to suppress, the court notes that, with respect to the seizure of the gun and the search of Defendant's vehicle, even if the seizure and/or search was otherwise unlawful, the court would nevertheless deny the motion to suppress on the basis

---

[5] Based on the evidence at the hearing and the findings regarding the gun, the court finds that the seizure of the open container of alcohol was lawful in that Atkins was lawfully seizing the gun when he observed the open container under the seat.

that Defendant's status as a felon would have inevitably been discovered shortly after the seizure of the gun. The officers testified that it is their practice to call into dispatch to verify a suspect's criminal history. The officers initiated the call into dispatch and were waiting to receive that confirmation back. Once that call was received confirming Defendant's status as a felon, the officers would have had probable cause to seize the gun as evidence of a crime and search the rest of the vehicle for additional evidence of that crime. *See United States v. Cintron*, 482 F. App'x 353, 359 (10th Cir. 2012).

### B. Motion to Dismiss

Defendant moves to dismiss count 4 on the basis that his prior Kansas conviction is not a felony because it was not punishable by imprisonment of more than one year. Title 18 of the United States Code Section 922(g)(1) prohibits possession of a firearm by "any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year." To determine if the crime was punishable by more than a year, the court is to look to Kansas law. *See United States v. Brooks*, 751 F.3d 1204, 1206 (10th Cir. 2014).

Kansas law utilizes sentencing grids: one for drug offenses and one for non-drug offenses. Kansas law provides that in presumptive nonprison cases, the court must "pronounce the prison sentence as well as the duration of the nonprison sanction at the sentencing hearing." K.S.A. 21-6805(c)(3). The journal entry reflects that Defendant was sentenced to 12 months imprisonment on count 1 and was granted probation from incarceration,[6] which was consistent with the sentencing grid.

---

[6] Defendant was also sentenced to probation and 10 months on count 3. The sentence on this count is not relevant to the issue on this motion to dismiss, as the presumptive sentencing range on that count was 10-12 months. (See Doc. 29, Exh. 1 at 3.)

13

In sentencing a criminal defendant, the court "has discretion to sentence at any place within the sentencing range." K.S.A. 21-6805(c)(1). A sentencing judge may depart from the presumptive sentence if there are "substantial and compelling reasons to impose a departure sentence." K.S.A. 21-6815(a). A departure is defined as "a sentence which is inconsistent with the presumptive sentence for an offender." K.S.A. 21-6803(f). A dispositional departure is a "departure sentence imposing...prison when the presumptive sentence is nonimprisonment." *Id.* at 21-6803(g). If the sentencing judge decides to impose a departure sentence, it must notify the parties of the intent to depart, state its reasons and allow reasonable time for a response. K.S.A. 21-6817(a)(3). If the government seeks a departure sentence, it must file a motion with the departure sought and the reasons for the same. *Id.* at 21-6817(a)(1). If a departure is imposed, the court must "make findings of fact as to the reasons for departure." *Id.* at 21-6817(a)(4).

In this case, Defendant fell within a presumptive probation box on the grid with a 12-14 month sentencing range. Pursuant to Kansas law, the sentencing court was required to 1) sentence Defendant to either 12, 13, or 14 months in prison, and 2) pronounce the duration of his nonprison sanction. Defendant was sentenced to 12 months in prison, which was suspended pending successful completion of an 18-month probation term, which included drug treatment.

Defendant contends that his drug conviction is not a crime punishable by imprisonment for a term exceeding one year under 18 U.S.C. § 922(g). Defendant argues that because he fell within a presumptive probation gridbox, Defendant could not have faced more than 12 months in prison. The sentencing court was required to impose probation and did not seek a departure. Defendant cites to Tenth Circuit and Supreme Court authority in support of his position. The court will address those cases in turn.

Previously, the Tenth Circuit had held that a court is to take into account the largest possible recidivist enhancement when "analyzing whether a defendant's prior crime was punishable by a certain amount of prison time under Kansas's scheme." *Brooks*, 751 F.3d at 1207 (citing *United States v. Hill*, 539 F.3d 1213, 1221 (10th Cir. 2008)). In 2010, the Supreme Court issued *Carachuri–Rosendo v. Holder*, 560 U.S. 563, 130 S. Ct. 2577 (2010). The decision in *Carachuri–Rosendo* held that "a recidivist increase can only apply to the extent that a particular defendant was found to be a recidivist," instead of using the "most severe recidivist increase possible." *Brooks*, 751 F.3d 1210. As a result, the Tenth Circuit held that *Hill* no longer controls and the court must revert to prior precedent. *Id.* at 1211.

Relying on *Carachuri–Rosendo*, the Tenth Circuit in *Brooks* then turned to the criminal history of Brooks to determine whether he was a career offender under Section 4B1.1(a) of the United States Sentencing Guidelines. In order to be designated as a career offender, a defendant must have at least two prior felonies, which are defined as offenses punishable by imprisonment for a term exceeding one year. *Id.* at 1206. One of Brooks' prior felonies was a conviction for eluding a police officer. Under the Kansas sentencing guidelines, Brooks' maximum sentence was only seven months. The government had relied on *Hill* to argue that the "hypothetical worst recidivist" could have received 17 months under the guidelines. *Id.* at 1209. The Tenth Circuit reversed, holding "in line with our pre-*Hill* precedent, that in determining whether a state offense was punishable by a certain amount of imprisonment, the maximum amount of prison time a particular defendant could have received controls, rather than the amount of time the worst imaginable recidivist could have received. As such, Defendant's prior Kansas conviction for eluding police is not a felony for purposes of U.S.S.G. § 4B1.1(a)." *Id.* at 1213.

15

The Tenth Circuit confirmed *Brooks'* holding in *United States v. Romero-Leon*, 622 F. App'x. 712 (10th Cir. 2015). In *Romero-Leon*, the circuit held that the defendant's convictions were not predicate convictions under the Armed Career Criminal Act (ACCA) because the most that the defendant could have received was nine years and the ACCA requires that the conviction be punishable by ten years. In order to have received a sentence of longer than ten years, the prosecution must have sought a departure by filing a pleading to give notice of aggravating factors. *Id.* at 718. No such pleading was filed. "So, under *Brooks*, Romero–León's 1999 drug crimes should not have triggered enhancement under the ACCA." *Id.*

Although the defendant in *Brooks* likely was in a gridbox that called for presumptive probation, the question of whether a defendant who is convicted of a crime that has a "presumptive sentence of probation means that the crime is punishable by only probation and not imprisonment" has not yet been addressed by the Tenth Circuit. *United States v. Thomas*, No. 09-CR-20040-JAR, 2016 WL 4060192, at *6 (D. Kan. July 29, 2016). Two District of Kansas decisions, however, have held that it is the sentence in the gridbox that controls for the purpose of whether a particular defendant's crime was punishable by more than a year imprisonment. *United States v. Sawyer,* No. 17-40060-01-CM, 2018 WL 572094, at *2 (D. Kan. Jan. 26, 2018); *United States v. Nichols*, No. 17-40007-01-DDC, 2018 WL 420029, at *8 (D. Kan. Jan. 16, 2018).

In *Nichols*, the defendant was convicted of a crime in Kansas that placed him in a presumptive probation box with a corresponding sentence of 11 to 13 months. He was sentenced to 24 months' probation and an underlying 12-month term of imprisonment. The sentencing court did not depart from the guidelines and the defendant successfully completed probation. The defendant presented similar arguments to the arguments raised in this case. Judge Crabtree, relying on a pre-*Brooks*' decision of this court, rejected the defendant's arguments.

16

In [*United States v. Wattree*, 544 F. Supp. 2d 1262 (D. Kan. 2008)], the defendant moved to dismiss a charge under § 922(g)(1). He argued—as Mr. Nichols argues here—that his 2000 Kansas conviction for burglary was not a predicate felony because the applicable Kansas sentencing grid box called for Presumptive Probation. The *Wattree* defendant was situated at precisely the same level as Mr. Nichols: his criminal history scored as a Level I and the severity level for his offense of conviction was VII. Judge Lungstrum's opinion in *Wattree* explained how the Kansas sentencing grid in effect in 2000 viewed the defendant. "The corresponding [grid] box on the sentencing table grid show[ed] an imprisonment range from eleven to thirteen months. The box also [was] located under the disposition line, indicating that there [was] a presumptive disposition of nonimprisonment, or in other words, presumptive probation."

Judge Lungstrum was not persuaded by the defendant's argument that his earlier conviction was not punishable by more than one year in prison and so Judge Lungstrum rejected his motion to dismiss. Judge Lungstrum's order explained that it was "the presumptive durational sentencing range and not the presumptive disposition [that] is determinative of whether a crime is punishable by more than a year" in prison.

While not duty bound to reach the same conclusion as *Wattree*, the court views Judge Lungstrum's order as highly persuasive authority. Absent some intervening change in law, the court would follow it and overrule Mr. Nichols's motion. On close review, the court concludes that much has changed with federal precedent since *Wattree* was decided in 2008. But as explained in the next three subsections, the court concludes that these changes do not call for a different result.

\*\*\*

For one thing, *Wattree* conducted a defendant-specific analysis. This is squarely in line with *Brooks* and *Romero-Leon's* application of *Carachuri-Rosendo's* mandate. And nothing in these cases (or the Eighth and Fourth Circuit cases, for that matter) requires the court to focus on the presumptive disposition. Indeed, the opposite is true. Each opinion focuses on the maximum term of imprisonment the defendant faced. Equally important, the Circuit decisions reviewing a Kansas state conviction—*Haltiwanger* and *Brooks*—did not consider the presumptive disposition to decide the issue.

\*\*\*

Applying *Wattree*'s holding, the court finds that the maximum term of imprisonment Mr. Nichols could have received in 2013 was 13 months. Thus, Mr. Nichols's 2013 Kansas state conviction is a predicate felony under § 922(g)(1).

*Nichols*, 2018 WL 420029, at \*3, 9 (internal citations omitted).

In *Sawyer*, Judge Murguia came to a similar result.

> Here, building on the rationale from *Wattree*, this court finds it is the durational sentencing range that is determinative of whether a conviction may count as a predicate felony under § 922(g) because probation, under Kansas law, is not a sentence. Kansas defines probation as "a procedure under which a defendant, convicted of a crime, is released by the court after imposition of sentence, without imprisonment except as provided in felony cases, subject to conditions imposed by the court and subject to the supervision of the probation service of the court or community corrections." K.S.A. § 21-6603(g) (emphasis added). The Kansas Supreme Court has found that a person on probation is not serving a sentence and that "probation is separate and distinct from the sentence." *Carr*, 53 P.3d at 850. Probation is a disposition "alternate to the serving of a sentence" and it does not increase or decrease the "sentence required to be imposed by statute." *Id.*; *see also State v. Snook*, 571 P.2d 78, 80 (Kan. Ct. App. 1977) ("As the Kansas Supreme Court has indicated, however, probation represents a grace period during which the defendant has the opportunity to demonstrate that rehabilitation can be achieved without incarceration.").
>
> So although defendant was granted a term of probation, probation was not his sentence. The court was required by law to give defendant both a prison sentence and to order a nonprison sanction. K.S.A. § 21-6804(e)(3). And defendant did receive a 12-month prison sentence that was suspended pending successful completion of the terms of probation. Probation was merely a "grace period" mandated by the sentencing guidelines to give defendant a chance to avoid serving his prison sentence. Regardless of whether defendant ever had to serve that prison term, he was still convicted of a crime that was punishable by imprisonment for a term exceeding one year. Nothing in the definition of a felony requires the defendant actually serve the term of imprisonment; only that the crime is punishable by a term of imprisonment exceeding one year.

*Sawyer*, 2018 WL 572094, at *3.

Because the gridbox had a range of 12-14 months, Judge Murguia held that the defendant was faced with a maximum term of imprisonment of 14 months and denied the motion to dismiss. *Id.* While the court is not bound by the decisions in *Wattree*, *Sawyer* and *Nichols*, it is persuaded by the rationale therein. While Kansas law requires notice and specific findings for a dispositional departure, which clearly did not happen here, Kansas law also requires a defendant to be sentenced to a prison term even when the sentence is presumptive probation. "When a sentence falls in the presumptive nonprison grid box, the sentencing court is required to pronounce the prison sentence and the duration of the nonprison sanction at the sentencing hearing." *State v. Hambright*, 53 Kan.

App. 2d 355, 361, 388 P.3d 613, 618 (2017), *review granted* (Oct. 27, 2017) (citing K.S.A. 2015 Supp. 21–6804(e)(3)).

In this case, the maximum prison term that could have been imposed on Defendant was 14 months, which is more than one year. Unlike in *Brooks*, the sentencing court was not required to do any additional fact-finding in order to sentence Defendant to a term of 14 months. Rather, that was a potential sentence under Kansas' sentencing guidelines. "Nothing in the definition of a felony requires the defendant actually serve the term of imprisonment; only that the crime is punishable by a term of imprisonment exceeding one year." *Sawyer*, 2018 WL 572094, at *3. As reasoned in *Sawyer*, probation is not a sentence in Kansas, but an alternative to serving the sentence that is imposed. *Id.* This is consistent with Kansas law. "In *State v. Carr*, 274 Kan. 442, 451, 53 P.3d 843 (2002), our Supreme Court held that probation is separate and distinct from the sentence. Probation does not increase or decrease the sentence required to be imposed by statute. Instead, it is a privilege, not a constitutional right. It is a substitute for time incarcerated, which an offender can accept or reject." *Hambright*, 53 Kan. App. 2d at 363.

Because Defendant was required under Kansas law to be sentenced to a term of imprisonment - suspended or not - and the maximum potential term was 14 months, the court finds that Defendant's prior Kansas conviction qualified as a felony under section 922(g).

### III. Conclusion

Defendant's motion to suppress is DENIED (Doc. 30) and Defendant's motion to dismiss (Doc. 28) is DENIED for the reasons stated herein.

IT IS SO ORDERED this 17th day of September, 2018.

    _s/ John W. Broomes_____
    JOHN W. BROOMES
    UNITED STATES DISTRICT JUDGE